**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **N.A.O., *an individual*,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:24-cv-4319** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **RED ROOF INNS, INC., *et al.*,** | : | **Magistrate Judge Kimberly A. Jolson** |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

This matter comes before the Court on Defendant Shivaya LLC's Motion to Dismiss (ECF No. 71). For the reasons set forth below, Shivaya's Motion is **DENIED**.

## I. BACKGROUND

This case arises under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595. Plaintiff N.A.O., proceeding anonymously, sued several Red Roof entities on December 30, 2024, alleging that she was the victim of sex trafficking at a Red Roof Inn hotel in Indianapolis, Indiana from various times between January 2012 and December 2014. (Compl., ECF No. 1 ¶¶ 1, 18, 22–23).

### A. Factual Allegations

In August 2025, N.A.O. amended her operative complaint, naming Defendants Red Roof Inns, Inc., Red Roof Holding Company, LLC, Red Roof Franchising, LLC, RRI West Management LLC, and FMW RRI NC LLC (collectively, the "Red Roof Defendants"). (Second Am. Compl., ECF No. 46).[1] These Red Roof Defendants are headquartered in and mainly operate their business

[1] The Court takes all well-pleaded allegations as true for the purposes of the instant Motion to Dismiss.

out of Ohio. (*Id.* ¶¶ 12–17). N.A.O. also named Red Roof franchisee Shivaya LLC d/b/a Arihant Hospitality LLC as an additional defendant.[2]

N.A.O.'s updated pleading alleges that she was the victim of sex trafficking at the Indianapolis Red Roof Inn hotel from April 1, 2011 through September 30, 2015. (*Id.* ¶¶ 26–27). Shivaya is alleged to have owned and operated the Indianapolis Red Roof Inn from February 25, 2015 until the end of N.A.O.'s trafficking period. (*Id.* ¶ 18). During that period of time, N.A.O. claims that her trafficking was "facilitated" by the Red Roof Defendants and franchisee Shivaya, who either knew or should have known that she was being sexually exploited. (*Id.* ¶¶ 29–32, 38). She points to several indicia that purportedly were "obvious signs" of her trafficking: her rooms were paid for in cash or with prepaid cards, she personally booked her room only a small fraction of the time "despite being present at the hotel approximately three days a week on an every other week basis," she only occasionally provided identification when booking a room, hotel staff "accepted cash payments 'under the table' directly from [N.A.O.] and her trafficker," she never stayed overnight at the hotel and had "few or no personal belongings" with her, she "consistently saw between four to ten johns per day in her room," there was "constant heavy foot traffic in and out of her room involving men who were not hotel guests," and these men "entered and exited at unusual hours" and stayed at the hotel "only briefly." (*Id.* ¶ 32; *see also id.* ¶ 79).

Moreover, according to N.A.O., "it was known among the community of traffickers that staff at the [hotel] turned a blind eye to sex trafficking," so N.A.O.'s trafficker put little effort to disguise her trafficking. (*Id.* ¶ 78). She claims that franchisee Shivaya's staff "had an opportunity to and did observe the signs of widespread sex trafficking" at the hotel, including the trafficking of N.A.O., but "despite this, allowed this activity to continue unabated." (*Id.* ¶¶ 89–90).

---

[2] Shivaya LLC indicates that its business name is now Arihant Hospitality LLC. (ECF No. 71).

N.A.O. alleges that her trafficking was facilitated by the Defendants in multiple ways. Particularly relevant here are her allegations that the Red Roof Defendants enabled traffickers accessing "ancillary services that supported trafficking activities, such as providing Wi-Fi access . . . used to advertise commercial sex services." (*Id.* ¶ 86). N.A.O. claims that this free Wi-Fi was used by her trafficker "to advertise and solicit commercial sex delivered by Jane Doe (N.A.O.) at the [hotel]." (*Id.* ¶¶ 86, 91). Through their corporate policies, the Red Roof Defendants allegedly required franchisee Shivaya "to offer free internet service to guests" at the hotel, "retained control over the details of that internet service and policies regarding its use," and then would collect data from their guests, including "browsing data[] and other details associated with their stay." (*Id.* ¶¶ 100–03). Under the franchise business arrangement, Shivaya was obligated "to use specific Wi-Fi service providers and to store their guest data on the [Red Roof] Defendants' centralized data platforms." (*Id.* ¶ 114). In this way, the Defendants supposedly benefitted from "acquiring valuable customer data when they provided free Wi-Fi to patrons" because they could "use[] this valuable guest data for marketing purposes and . . . to sell to third parties." (*Id.*). They allegedly knew that their Wi-Fi service was being used to access "websites like Backpage, and other notorious pages used for the advertisement of commercial sex," and understood if they limited patron access to such websites, "they would lose traffickers' and buyers' regular and profitable patronage." (*Id.*).

N.A.O. provides additional reasons why she believes the hotel staff understood that she was being trafficked there for commercial sex. She alleges that her trafficker "was familiar to the staff" and "took no steps to conceal her activities . . . but, instead, freely made requests that would facilitate her trafficking activities without concern for detection or interference." (*Id.*). Aside from the provision of internet access, she alleges that Defendants' hotel staff provided "excessive

towels" and "extra housekeeping services to clean the activities of the trafficking venture once the traffickers vacated the rooms." (*Id.*).

Unlike the Ohio-based Red Roof Defendants, Shivaya operates out of Indiana. (*Id.* ¶ 18). Plaintiff asserts claims against Shivaya arising from Shivaya's contacts with Ohio, including its franchise agreement with the Red Roof Defendants, franchisor policies impacting Shivaya that were promulgated in Ohio, and electronic information that was sent by Shivaya to the Red Roof Defendants in Ohio. (*Id.* ¶ 23; *see id.* ¶¶ 99, 103).

**B. Subsequent Procedural History**

After N.A.O. amended her pleading, Defendants Red Roof Inns, Inc., Red Roof Franchising, LLC, and RRF Holding Company, LLC (collectively, the "Red Roof Crossclaim Defendants") each brought crossclaims against Shivaya pursuant to Fed. R. Civ. P. 13(g). They assert that under the franchise agreement, Shivaya agreed to take full responsibility for the safety and security of guests at the hotel, and to indemnify and defend the Red Roof franchisor and its affiliates. (*E.g.*, ECF No. 53 ¶¶ 17–19; *accord* ECF Nos. 51; 52). Each of the Red Roof Crossclaim Defendants asserted four counts against Shivaya for contractual indemnification and defense, common law indemnification, contribution, and breach of contract. (*E.g.*, ECF No. 53 ¶¶ 20–40; *accord* ECF Nos. 51; 52).

In November 2025, Shivaya filed the instant Motion to Dismiss, (ECF No. 71), which first sought to dismiss N.A.O.'s Second Amended Complaint as against Shivaya for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), impermissible shotgun pleading, and failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (*Id.* at 1). In addition to its jurisdictional arguments, Shivaya's Motion also sought dismissal of each of the three sets of Red Roof Crossclaim Defendants' four crossclaims as unripe. (*Id.* at 1–2).

In response, N.A.O. took no position on the crossclaim dispute, but argued that Shivaya's Motion should be denied in its entirety with respect to her Second Amended Complaint. (ECF No. 77 at 1). She asserted that her Second Amended Complaint was not an impermissible shotgun pleading, the Court has personal jurisdiction over Shivaya, and her pleading stated a civil beneficiary claim. (*Id.* at 2–3).

Meanwhile, the Red Roof Crossclaim Defendants opposed Shivaya's attempt to dismiss their crossclaims. And while they took no position on whether the Court has personal jurisdiction over N.A.O.'s claims against Shivaya, they assert that the Court does have personal jurisdiction over the crossclaims at issue, and that Fed. R. Civ. P. 13(g) permits anticipatory crossclaims at this juncture of the case. (ECF No. 76 at 1–2).

Shivaya has replied, (ECF Nos. 83; 84), and this matter is ripe for review.

## II. STANDARD OF REVIEW

A Rule 12(b)(2) motion to dismiss challenges the district court's personal jurisdiction over the movant, whereas a Rule 12(b)(6) motion to dismiss challenges the sufficiency of the pleading. When both motions are made, federal courts must first address the Rule 12(b)(2) motion, "[b]ecause personal jurisdiction is a threshold determination linked to any subsequent order issued by the court." *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006). The legal standard for each type of motion is set forth below.

### A. Personal Jurisdiction

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) challenges the district court's personal jurisdiction over the case. To determine that personal jurisdiction exists over an out-of-state defendant, the court must find: (1) the forum state's long-arm statute authorizes jurisdiction; and (2) exercising that jurisdiction comports with constitutional due process. *Air*

*Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). The plaintiff bears the burden of establishing that personal jurisdiction exists over a defendant. *Id.* at 549.

Where, as here, "the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' and 'the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal.'" *Id.* (citations omitted). The plaintiff can make this showing by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (citation omitted). In deciding a Rule 12(b)(2) motion, a district court "must consider the pleadings and affidavits in a light most favorable to the non-moving party," and "does not weigh the controverting assertions of the party seeking dismissal." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

**B. Failure to State a Claim**

Separately, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A motion to dismiss pursuant to Rule 12(b)(6) evaluates the sufficiency of the complaint, and permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a motion tests the complaint's cause of action, and is "not a challenge to [its] factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). Thus, in evaluating a Rule 12(b)(6) motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff, accept [all] allegations as true, and draw all reasonable inferences in [its] favor." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal

quotation marks and citation omitted). This favorable treatment of the complaint applies to well-pleaded factual allegations. Complaints cannot rest on legal conclusions, as "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" are insufficient; similarly, factual assertions cannot rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). In sum, the facts alleged must be sufficient to "raise a right to relief above the speculative level," such that the complaint states a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 555, 570; *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

Beyond the complaint itself, courts may also consider exhibits attached to the complaint, "public records, items appearing in the record of the case and exhibits attached to the defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430.

## III. LAW & ANALYSIS

Red Roof franchisee Shivaya seeks to dismiss Plaintiff N.A.O.'s TVPRA claim against it. Shivaya argues that as an Indiana business, Ohio courts lack personal jurisdiction over it for its Ohio contacts that are merely incidental to the franchising business arrangement. Shivaya challenges the adequacy of notice provided by N.A.O.'s Second Amended Complaint, and contends that N.A.O. has failed to state a claim. Finally, Shivaya attacks the timing of four crossclaims brought by the Red Roof Crossclaim Defendants for contractual indemnity, common law indemnity, contribution, and breach of contract. It seeks dismissal of these crossclaims as well.

The Court finds that it has personal jurisdiction over Shivaya, N.A.O.'s pleadings provide adequate notice of the allegations against Shivaya and suffice to state a claim, and there is no issue with the timing of the crossclaims asserted against Shivaya—though the sufficiency of common law indemnity and contribution crossclaims may be doubtful in light of the Court's jurisprudence in related cases. Because the parties did not address the viability of those particular crossclaims, the Court will provide the Red Roof Crossclaim Defendants with an opportunity to explain why those claims should not be dismissed by the Court.

The Court's analysis is set forth below.

### A. Personal Jurisdiction

First, Shivaya argues that the Court lacks personal jurisdiction over it, and therefore this case must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2). (*See* ECF No. 71 at 10–17).

#### *1. Principles*

Personal jurisdiction exists over a defendant if that defendant is "amenable to service of process" under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny it due process. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). There are two categories of personal jurisdiction: general and specific. *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (Marbley, J., by designation).

General jurisdiction exists when the defendant's contacts or affiliations with the forum state are "so 'continuous and systematic' as to render" the defendant "essentially at home" there. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). For a corporation, this all-purpose general

jurisdiction exists where it is fairly regarded at home—paradigmatically, "where it is incorporated or has its principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Specific jurisdiction, on the other hand, exists over out-of-state defendants where they have "'certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Goodyear*, 564 U.S. at 923 (quoting *Int'l Shoe*, 326 U.S. at 316). It "depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation," and is "confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* (citations omitted). The plaintiff must show that the out-of-state defendant "'purposefully directed' his activities at the residents of the forum," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)), "and the litigation results from alleged injuries that 'arise out of or relate to' those activities," *id.* at 472–73 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

### *2. General Personal Jurisdiction*

Shivaya contends that "[n]o evidence or allegations support the exercise of general jurisdiction," (ECF No. 71 at 15), and both N.A.O. and the Red Roof Crossclaim Defendants seem to agree, as they only argue specific personal jurisdiction. (ECF No. 76 at 3; 77 at 5). On this basis, the Court finds that Shivaya is not subject to the Court's general personal jurisdiction, as neither N.A.O. nor the Red Roof Crossclaim Defendants have alleged or argued this form of jurisdiction. *See Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 502 (6th Cir. 2020) (no

general personal jurisdiction where no allegations support it). Still, Shivaya may be subject to specific personal jurisdiction.

### ***3. Specific Personal Jurisdiction***

The Court's subject matter jurisdiction arises under federal question jurisdiction, so specific personal jurisdiction "exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Bird*, 289 F.3d at 871 (cleaned up).

Contrary to Shivaya's position that Ohio's long-arm statute "does not extend personal jurisdiction to the limits of due process," (ECF No. 71 at 11), Ohio's long-arm statute became "coextensive" with the limits of due process. *C.T. v. Red Roof Inns, Inc.*, 2021 WL 2942483, at *10 (S.D. Ohio July 1, 2021) (Marbley, J.). As of April 7, 2021, "a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution." Ohio Rev. Code § 2307.382(C). All of Shivaya's legal authority addressing the state's long-arm statute predates this revision and is stale. (*See* ECF No. 71 at 11–14). Therefore, the inquiry into Ohio's long-arm statute collapses into the analysis of [Shivaya's] due process rights.[3]

The Sixth Circuit has set forth three requirements to protect the due process rights of a defendant and determine whether specific personal jurisdiction exists: (1) the defendant "must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state"; (2) "the cause of action must arise from [or relate to] the defendant's activities

---

[3] Although N.A.O. argues that Shivaya is subject to the Court's personal jurisdiction pursuant to Ohio Rev. Code § 2307.382(A)(1) because it transacted business in the state, (ECF No. 77 at 5), the Red Roof Crossclaim Defendants correctly observe that personal jurisdiction is available pursuant to Ohio Rev. Code § 2307.382(C). (ECF No. 76 at 7–8).

there"; and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Intera Corp.*, 428 F.3d at 615 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Shivaya challenges each element. First, it argues that royalty payments, brand compliance, and communications directed at its franchise headquarters in Ohio are incidental to a franchise business, and do not amount to purposeful availment. Second, it contends that N.A.O.'s claims do not arise out of Ohio contacts because both N.A.O. and Shivaya are in Indiana, where the alleged trafficking occurred, and Shivaya's only connection to Ohio is the franchise agreement. Third, it posits that it would be unreasonable to require Shivaya to defend itself in Ohio while it conducts business in Indiana. (ECF No. 71 at 15–17). N.A.O. counters that the franchise business is part of the venture at issue, and that the franchisor's policies, systems, and data flows to and from Ohio "enabled and facilitated" N.A.O.'s trafficking. (ECF No. 77 at 8). In the alternative, she argues that she is entitled to jurisdictional discovery. (*Id.* at 9–10). The Court concludes that Shivaya's arguments fail, so jurisdictional discovery is unnecessary.

*a. Purposeful Availment*

With respect to purposeful availment, the Supreme Court has repeatedly "emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)). True, this inquiry may not be satisfied by the mere existence of a franchise contract. But N.A.O. has made a slew of allegations connecting Shivaya and its franchised hotel to Ohio. Dispositive here are N.A.O.'s allegations that Shivaya transmitted

electronic information to the Red Roof Defendants in Ohio as required by the franchisor's policies. Taking the Second Amended Complaint's well-pleaded allegations as true, Shivaya was required to transmit data to the Red Roof Defendants in Ohio, including guest data from Wi-Fi use. This guest data included N.A.O.'s trafficker advertising her for commercial sex on the internet. (*See, e.g.*, ECF No. 46 ¶¶ 99, 100–03, 114). The intentional direction of electronic data into Ohio pursuant to a franchise agreement is "sufficient to show purposeful availment, at least where those very data transmissions form a basis of the claim." *H.M.L. v. Red Roof Inns, Inc.*, 2026 WL 872917, at *5 (S.D. Ohio Mar. 30, 2026) (Marbley, J.) (cleaned up; citation omitted). As the Court explained in *H.M.L.*:

> By sending this data to Red Roof, [an out-of-state franchisee] 'reached the state of Ohio through its computer wires,' transmitting electronic data directly relevant to Plaintiff's claims to Red Roof in Ohio. In doing so, [the out-of-state franchisee] expressly aimed allegedly wrongful conduct at Ohio. It provided free Wi-Fi to its hotel guests, through which [the plaintiff] was allegedly 'advertised and solicited for commercial sex,' and then gathered and transmitted that 'customer data' to Ohio.

*Id.* (cleaned up; citations omitted).

Shivaya expressly aimed its allegedly wrongful conduct at Ohio by contacts that were its own choice, and not random, isolated, or fortuitous. *See Briskin v. Shopify, Inc.*, 135 F.4th 739, 758 (9th Cir. 2025) (en banc). "The reality that modern business often occurs electronically . . . will not defeat personal jurisdiction." *Power Invs., LLC v. SL EC, LLC*, 927 F.3d 914, 918–19 (6th Cir. 2019). As the Court concluded in *H.M.L.*:

> This Court need not determine whether the franchise relationship alone, or allegations of payment processing, operations, policies, or employee training by a franchisor establish specific personal jurisdiction over an out-of-state franchisee hotel. Well-pleaded allegations that the franchisee sent Wi-Fi data to its franchisor are enough, standing alone, to show purposeful availment, if the plaintiff's

> allegation is that the Wi-Fi data directly related to her trafficking. Thus, the first element is met.

*H.M.L.*, 2026 WL 872917, at *6. So too, here.

*b. Cause of Action*

Next, the cause of action must arise from or relate to the defendant's activities in the forum state. This requirement is "subject to a lenient standard." *Carbone v. Kaal*, 140 F.4th 805, 813–14 (6th Cir. 2025) (citation and internal quotation marks omitted); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 592 U.S. 351, 359 (2021). Again, *H.M.L.* is instructive. There, the Court determined that a franchisee "digitally reached out to Ohio" in a way that directly related to the plaintiff's TVPRA case when the franchisee allegedly transferred internet data, "including data that [the] trafficker used to advertise and solicit [the plaintiff's] sexual exploitation, from its hotel [out-of-state] to Red Roof headquarters in Ohio as a regular part of its business operations." *H.M.L.*, 2026 WL 872917, at *7. These alleged data transfers formed part of the plaintiff's TVPRA claim in *H.M.L.*, just as they do here, as they "implicate the elements of the beneficiary theory of liability." *Id.* at *8.

To succeed under the beneficiary theory of liability, N.A.O. must show: (1) that Shivaya knowingly benefitted, or attempted or conspired to benefit; (2) from participating in a venture; (3) that it knew or should have known was engaging in human trafficking in violation of 18 U.S.C. §§ 1581–97. 18 U.S.C. § 1595(a); *see, e.g.*, *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019) (Marbley, J.); *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 553–54 (7th Cir. 2023) (citing, *inter alia*, *M.A.*). Data transfers of hotel guest internet use "help form the basis of Plaintiff's TVPRA claim against all Defendants," as these transfers "involved the transmission of information that [the franchisee] *was required to collect and send to Ohio* as part and parcel of its hotel business." *H.M.L.*, 2026 WL 872917, at *8; *see also A.A. v. Omnicom Grp.,*

*Inc.*, 834 F. Supp. 3d 419, 442–43 (S.D.N.Y. 2026). Based on N.A.O.'s allegations, Shivaya is simply incorrect that the alleged conduct "occurred solely within Indiana." (ECF No. 71 at 16–17). And N.A.O.'s TVPRA claim certainly arises, at least in part, out of Shivaya's alleged conduct directed at its franchisor in Ohio. The second element is met.

*c. Reasonableness*

Finally, the exercise of personal jurisdiction over an out-of-state defendant must be reasonable. To determine whether exercising jurisdiction over the defendant is "reasonable" under the third requirement, courts consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief in that particular forum. *Beydoun v. Wataniya Rest. Holding, Q.S.C.*, 768 F.3d 499, 508 (6th Cir. 2014) (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987)). Where the first two requirements of due process are met, "there is an inference that the reasonableness prong is satisfied as well." *Intera Corp.*, 428 F.3d at 618. Because Shivaya has purposefully directed relevant activities to Ohio, it "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

Shivaya's sole argument is that "it would be unreasonable to require an Indiana company to defend a case in Ohio and to work in Indiana." (ECF No. 71 at 16). This argument is conclusory and undeveloped, and fails for this reason. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention [an] argument is the most skeletal way, leaving the court . . . to put flesh on its bones.") (citations omitted). Shivaya has not provided any argument—let alone a compelling one—that the exercise of jurisdiction would be unreasonable. The mere fact that Shivaya operates its business in Indiana is not a basis to shield it from specific personal jurisdiction in Ohio. Shivaya elected to enter into a business agreement to franchise a

hotel from the Red Roof Defendants, who operate their business in Ohio. Moreover, Shivaya allegedly sent Wi-Fi data to its franchisors in Ohio that directly relates to N.A.O.'s TVPRA claim. Even though Shivaya is an Indiana company and presumably would be burdened to a certain degree to have to defend a lawsuit in Ohio, Shivaya "knew such a suit could be a possibility when it became a Red Roof franchisee." *H.M.L.*, 2026 WL 872917, at *8 (citing *Opportunity Fund, LLC v. Epitome Sys., Inc.*, 912 F. Supp. 2d 531, 540–41 (S.D. Ohio 2012) (Marbley, J.)). The third element is met, and Shivaya's due process rights would not be violated by the exercise of personal jurisdiction over it in this case.

**B. Shotgun Pleading**

Next, Shivaya argues that the Second Amended Complaint constitutes impermissible shotgun pleading in violation of Rule 8. (ECF No. 71 at 5–6). N.A.O. counters that Shivaya's arguments have been previously rejected by the Court in its related cases, and at any rate, the Second Amended Complaint provides sufficient notice to Shivaya of the claims against it. (ECF No. 77 at 10–11). Shivaya replies by emphasizing N.A.O.'s collective allegations against "Defendants" generally, which do not provide more specificity regarding individual defendants. (ECF No. 83 at 7–9).

Rule 8 requires that pleadings contain "a short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under it, a complaint must give each defendant "fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). "While the Sixth Circuit does not use the term often, a 'shotgun pleading' is generally 'a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.'" *Arnold v. CooperSurgical,*

*Inc.*, 681 F. Supp. 3d 803, 823–24 (S.D. Ohio 2023) (Sargus, J.) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015)). For example, a complaint that provided multiple causes of action "contained within a single sentence" was pleaded impermissibly, in part because a failure to "connect specific facts or events with the various causes of action . . . asserted" resulted in a pleading that did not provide adequate notice to the defendants of the claims against them and the grounds upon which each claim rested. *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 392–93 (6th Cir. 2020) (citations and internal quotation marks omitted). Such a failure violates Rule 8(a). Relatedly, the failure to separate each cause of action or claims for relief into separate counts violates Rule 10(b). *Id.* at 393.

The complaint at issue in *Lee* is a far cry from N.A.O.'s Second Amended Complaint in this case. Here, N.A.O.'s Second Amended Complaint "does not allege all her causes of action in a single sentence." *Arnold*, 681 F. Supp. 3d at 824. Rather, N.A.O. brings a *singular* TVPRA cause of action against all Defendants under a beneficiary theory of liability, as well as a distinct vicarious theory of liability against the Red Roof Defendants. (ECF No. 46 ¶¶ 116–126). Here, Shivaya *cannot* avail itself of a shotgun pleading defense for the singular count that is alleged against it, as the Second Amended Complaint "sets forth unique factual matter" for that singular count, and "does not make it 'virtually impossible' for [Shivaya] to know which facts support" the claim against it. *Arnold*, 681 F. Supp. 3d at 824–25; *see also Bostic v. Davis*, 2017 WL 784814, at *2 (S.D. Ohio Mar. 1, 2017) (Marbley, J.) ("When it is virtually impossible to know which factual allegations in a pleading are intended to support which claims for legal relief, a motion for a more definite statement is appropriate.").

Shivaya also suggests that N.A.O.'s Second Amended Complaint is impermissibly pleaded because it "vaguely lumps together all Defendants" for the majority of its allegations. (ECF No.

71 at 6). This shotgun pleading critique is best thought of as a "group pleading" argument.[4] But the Second Amended Complaint defines the term "Defendants," and refers separately to the Red Roof Defendants (as the "RRI Defendants") and Shivaya (as the "Franchisee" or "Franchisee Defendant"). (ECF No. 46 ¶¶ 17–18). In fact, the only paragraphs to which Shivaya points generally do distinguish between the Defendants as a whole and subgroups of the Defendants. (*See id.* ¶¶ 69–82, 111–26). This is not problematic group pleading, because Shivaya can and should fairly understand itself to be one of the "Defendants" that N.A.O. is referencing. "[A]sserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" is a "relatively rare sin." *Weiland*, 792 F.3d at 1323.

Moreover, N.A.O.'s pleading is consistent in frequently grouping the Defendants together due to the alleged "intertwined business relationship[] and the intertwined facts in the case," *Arnold*, 681 F. Supp. 3d at 825, which would logically follow from a franchisor-franchisee business relationship. Even where a pleading groups certain defendants together, "the failure to specify a particular defendant is not fatal when the complaint can be fairly read to aver that all the defendants are responsible for the alleged conduct." *S.Y. v. Wyndham Hotels & Resorts, Inc.*, 519 F. Supp. 3d 1069, 1078 (M.D. Fla. 2021) (citations omitted; cleaned up); *accord K.O. v. G6 Hosp., LLC*, 728 F. Supp. 3d 624, 640–42 (E.D. Mich. 2024) (A complaint that includes broad allegations" when does not merit dismissal under Rule 8(a)(2) when those broad allegations are combined with "other more specific facts."). Shivaya's shotgun pleading argument fails. The Second Amended Complaint may not be the model of pleading for various reasons, including its repetition and

[4] This is distinct and separate from "group pleading" in other contexts, for instance, when evaluating allegations of fraud under the Private Securities Litigation Reform Act of 1995. *See City of Monroe Emp. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 689–90 (6th Cir. 2005).

significant length to bring a singular cause of action. But Shivaya has received fair notice of the allegations against it.

**C. Failure to State a Claim**

Shivaya also challenges the sufficiency of N.A.O.'s operative pleading on its merits. Shivaya's core contention is that the Second Amended Complaint fails to allege sufficient facts to state a plausible claim against it, and must be dismissed for this reason. (ECF No. 71 at 1–2, 6–8). Shivaya argues that liability can only attach under a civil beneficiary theory claim where the defendant is alleged to be the perpetrator who violated the criminal provision, 18 U.S.C. § 1591, or someone who "*knowingly* benefits financially . . . from *participation in a venture* which that person knew or should have known has engaged in an act in violation of this chapter." (ECF No. 71 at 7 (quoting 18 U.S.C. § 1595(a)) (emphasis in original)). Pointing to the Sixth Circuit's decision in *United States v. Afyare*, Shivaya argues that participation in a venture requires actual participation and overt action furthering the sex trafficking aspect of the venture. (*Id.*).

N.A.O. counters that Shivaya's reliance on *Afyare* is unavailing because that case does not control. (ECF No. 77 at 12–13). She argues that she has plausibly alleged sufficient facts to state a claim in light of the Court's extensive precedent in related sex trafficking cases proceeding under a civil beneficiary theory against hoteliers. (*Id.* at 12–16).

Shivaya's read of *Ayfare* overextends its holding, given *Ayfare* was determined in the criminal context. Shivaya's reply effectively concedes as much. (*See* ECF No. 83 at 8). *Afyare* provided that the TVPRA's statutory provision *criminalizing* participation in a venture requires actual participation in the venture. The Sixth Circuit determined that "§ 1591(a)(2) targets those who participate in sex trafficking. . . . [W]e would require the prosecution to prove that the defendant actually participated in a *sex trafficking venture*" when the United States seeks to

prosecute a criminal defendant under § 1591(a)(2). *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016). Furthermore, Shivaya *entirely* fails to address the Court's jurisprudence on this exact issue. As the Court explained nearly seven years ago, "'participation' under § 1595"—the statutory provision creating a private right of action for *civil* liability—"does not require actual knowledge of participation in the sex trafficking itself." *M.A.*, 425 F. Supp. 3d at 968–70 (distinguishing *Afyare*). As a remedial statute, § 1595 must be "liberally construed." *Peyton v. Rowe*, 391 U.S. 54, 65 (1968); *accord Noble v. Weinstein*, 335 F. Supp. 3d 504, 515 (S.D.N.Y. 2018) (finding § 1595 is a "remedial provision" that "requires broad interpretation"). Crucially, "[t]he language of § 1591 differs from the language of § 1595—the former does not have a constructive knowledge element manifested by 'should have known' language." *M.A.*, 425 F. Supp. 3d at 969; *see generally G.G.*, 76 F.4th at 555–58. Shivaya's omission of *M.A.* and its progeny is glaring. Its argument is squarely foreclosed by the Court's precedent addressing similar arguments.

Shivaya also argues that N.A.O.'s damages requests are untenable and not plausibly pleaded. (ECF No. 71 at 8–10). But as N.A.O. points out, (*see* ECF No. 77 at 16), Shivaya's argument here is focused on state-law principles of tort liability and the particular duties required of innkeepers. Shivaya ignores that the TVPRA's beneficiary-theory of liability is a Congressionally-created remedy provided for by *federal* statute, and not Ohio statute or common law. Thus, Shivaya's reliance on "Ohio case law requir[ing] . . . that hotel staff be acutely aware of danger posed to guests in order for liability to result," (ECF No. 71 at 9), appears irrelevant to N.A.O.'s cause of action against it. Instead, the civil remedy TVPRA provision incorporates a

constructive knowledge standard. *See, e.g.*, *M.H. v. Red Roof Inns, Inc.*, 2026 WL 2686738, at *6–8 (S.D. Ohio Sept. 14, 2026) (Marbley, J.) ("Constructive knowledge is sufficient.").

**D. Timing of Crossclaims**

Finally, Shivaya turns to the crossclaims asserted against it by each of the three Red Roof Crossclaim Defendants on the same four counts: (1) contractual indemnification and defense; (2) common law indemnification; (3) contribution; and (4) breach of contract.

***1. Rule 13(g)***

Federal Rule of Civil Procedure 13 governs crossclaims against co-parties. It provides:

> A pleading may state as a crossclaim any claim by one party against a coparty if that claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. The crossclaim may include a claim that the coparty is *or may be liable* to the crossclaimant for all or part of a claim asserted in the action.

Fed. R. Civ. P. 13(g) (emphasis added).

Where property is not at issue, as no property is here, Rule 13(g) can be understood as stating "two prerequisites for a cross-claim: (1) that it be a claim by one party against a co-party and (2) that the claim arise out of the same transaction or occurrence as the original action or a counterclaim." *McDonald v. Oliver*, 642 F.2d 169, 182 (5th Cir. 1981).

***2. Parties' Arguments***

Shivaya's position is that as a matter of Ohio law, the Red Roof Crossclaim Defendants' claims are premature and should be dismissed as unripe. (ECF No. 71 at 17–19).

The Red Roof Crossclaim Defendants counter that Shivaya confuses the state substantive law governing these crossclaims with the federal procedural rules for when such crossclaims can be asserted. They argue that Federal Rule of Civil Procedure 13(g)'s plain language permits such

contingent liability crossclaims, and therefore these claims are permissibly asserted. (ECF No. 76 at 10–13).

In reply, Shivaya interprets Rule 13(g) as requiring that crossclaims arise out of the same transaction or occurrence, and thus not permitting crossclaims arising from contractual agreements because they are separate and distinct from claims arising from alleged violations of the TVPRA. (ECF No. 84 at 6). In Shivaya's view, these crossclaims "are premised on franchise or indemnity agreements, requiring proof of contract formation, contractual duties, breach, and allocation of commercial risk," which means they necessarily "turn on different evidence, different legal standards, and different operative facts." (*Id.*).

### ***3. Analysis***

As a threshold matter, Rule 13(g)'s express terms demonstrate that crossclaims can be contingent. Shivaya's argument that the crossclaims would be premature has no merit. "[T]he crossclaim provision does not require that the claim be mature at the time of pleading." *Hobart Corp. v. Dayton Power & Light Co.*, 2016 WL 5390346, at *2 (S.D. Ohio Sept. 26, 2016) (Rice, J.) (quoting 6 Wright & Miller's Federal Practice and Procedure § 1431 (3d ed.)).

Turning to the two prerequisites, there is no doubt that the first prerequisite is met. The Red Roof Crossclaim Defendants and Shivaya are co-parties, so the only question is whether the crossclaims against Shivaya arise out of the same transaction or occurrence.[5]

In conducting this evaluation, the Court considers the "logical relationship" of the crossclaim to the claims in the original complaint, evaluating "whether the issues of law and fact

---

[5] To the extent that Shivaya suggests that jurisdiction over it is lacking, either for the crossclaims or otherwise, it is mistaken. As stated, the Court has personal jurisdiction over Shivaya for N.A.O.'s overarching claims against it. *See* Section III(A), *supra*. The Court also has personal jurisdiction over the claims brought by the Red Roof Crossclaim Defendants, given that Shivaya entered into a franchise agreement with the Ohio-based Red Roof franchisor entities, and in doing

raised by the claim are largely the same and whether substantially the same evidence would support or refute both claims." *Sanders v. First Nat'l Bank & Tr. Co. in Great Bend*, 936 F.2d 273, 277 (6th Cir. 1991) (citing *Moore v. N.Y. Cotton Exchange*, 270 U.S. 593 (1926)). The Sixth Circuit has instructed that "[t]he words 'transaction or occurrence' are given a broad and liberal interpretation to avoid a multiplicity of suits." *LASA per L'Industria Del Marmo Societa Per Azioni of Lasa, Italy v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969). Rule 13 is "remedial" and thus must be "construed liberally," as it is "intended to avoid circuity of action and to dispose of the entire subject matter arising from one set of facts in one action, thus administering complete and evenhanded justice expeditiously and economically." *Id.* at 146 (citation and internal quotation marks omitted).

Under the logical relationship test, and with a liberal interpretive gloss of "transaction or occurrence," the Red Roof Crossclaim Defendants' claims against Shivaya arise out of the same transaction or occurrence for Rule 13(g) purposes. The key facts regarding N.A.O.'s alleged trafficking at the hotel overlap with the crossclaims against Shivaya. To be sure, the crossclaims raise additional legal issues—for example, they crystallize questions as to whether, under the terms of the Franchise Agreement, Shivaya was the entity responsible for guest "safety and security" and obligated to "indemnify, protect, defend[,] release and hold harmless" its Red Roof franchisors during its period of ownership. (ECF No. 53-1 §§ 5.12.1, 15.2.2; *see, e.g.*, ECF No. 53 ¶¶ 17–19). But these legal issues are not *truly* new. N.A.O.'s allegations naturally raise questions regarding the responsible corporate entity or entities pursuant to the franchise relationship between Shivaya

---

so submitted "to the jurisdiction of the state and federal courts located in Columbus, Ohio." (ECF No. 53-1 § 17.7). As far as subject-matter jurisdiction is concerned, Rule 13(g) claims "are within the ancillary jurisdiction of the court and do not require an independent jurisdictional basis." *Jones v. Ill. Dep't of Rehab. Servs.*, 689 F.2d 724, 732 (7th Cir. 1982).

and the Red Roof Defendants. (*See, e.g.*, ECF No. 46 ¶¶ 23–25 (allegations about Shivaya's conduct arising from the franchise agreement), 26, 35–36 (allegations that Shivaya owned and operated the hotel from February 25, 2015 until at least September 30, 2015)).

At its core, the key inquiry does not change: the question remains which hotel entity or entities may be civilly liable for N.A.O.'s alleged trafficking at the Indianapolis Red Roof Inn.[6] The same "essential facts" form the basis for each set of claims. *AT Law Grp., PLLC v. Allstate Ins. Co.*, 461 F. Supp. 3d 610, 624 (E.D. Mich. 2020). And "[m]any of the same or closely related factual and legal issues necessarily will be presented under the complaint . . . and cross-claims." *LASA*, 414 F.3d at 147. "It seems apparent that some of the same evidence will be required in the hearing on the cross-claims and in the hearing or hearings with respect to the complaint," and since the purpose of Rule 13 is for "all such matters may be tried and determined in one action and to make it possible for the parties to avoid multiplicity of litigation," *id.*, the Court must reject Shivaya's transaction/occurrence challenge to the crossclaims.

That does not necessarily mean, however, that all the Red Roof Crossclaim Defendants' crossclaims against Shrivaya can prevail. The parties do not address the prior decisions of the Court that have considered claims for contractual indemnification and defense, common-law indemnification, contribution, and breach of contract in related sex trafficking cases. The Court has "repeatedly rejected attempts by hotel defendants to bring contribution and indemnification claims—typically against hotel franchisees—in related cases." *M.H.*, 2026 WL 2686738, at *4–5 (collecting cases). Because the parties have not addressed the viability of these specific claims,

---

[6] In this way, crossclaims between hotel defendants are distinct from the attempts of insurers to intervene in these sex trafficking actions. *Compare In re Hotel TVPRA Litig.*, 2026 WL 799293, at *3 (S.D. Ohio Mar. 23, 2026) (Marbley, J.) ("Potential coverage under various insurance policies is irrelevant to Plaintiff's TVPRA claims against Defendants.") (citation omitted; cleaned up).

the Court will not address them yet, in light of the Sixth Circuit's warning that "a 'district court should proceed with great caution when dismissing a claim *sua sponte*.'" *Melton v. Blankenship*, 2009 WL 87472, at *4 (6th Cir. Jan. 13, 2009) (quoting *Boddie v. Am. Broad. Cos.*, 731 F.2d 333, 336 n.2 (6th Cir. 1984)). Before *sua sponte* dismissal for failure to state a claim, the Court will give the claimant notice and a chance to respond. *See Morrison v. Tomano*, 755 F.2d 515, 516–17 (6th Cir. 1985).

## IV. CONCLUSION

For the foregoing reasons, Defendant Shivaya LLC's Motion to Dismiss (ECF No. 71) is **DENIED**.

Within **twenty-eight** (28) days of the date of this Order, the Red Roof Crossclaim Defendants (Red Roof Inns, Inc., Red Roof Franchising, LLC, and RRF Holding Company, LLC) are **ORDERED** to address the Court's jurisprudence on common-law indemnification and contribution claims brought by franchisors against franchisees in related sex trafficking cases. In a brief not more than **fifteen** (15) pages in length, the Red Roof Crossclaim Defendants are to **SHOW CAUSE** why their counts for common-law indemnification and contribution should not be dismissed for failure to state a claim in light of the Court's September 14, 2026 decision in *M.H. v. Red Roof Inns, Inc.*, Case No. 2:22-cv-3258, 2026 WL 2686738, as well as the precedent discussed therein.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 22, 2026**